THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT W. HOOKER, Defendant-Appellant.

Second District No. 2—92—0343

Opinion filed December 22, 1993.

G. Joseph Weller, Kathleen J. Hamill, and Kim M. DeWitt, all of State Appellate Defender's Office, of Elgin, for appellant.

Douglas P. Floski, State's Attorney, of Oregon (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Robert W. Hooker, was convicted on January 8, 1992, following a jury trial in the circuit court of Ogle County of one count of aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, par. 12—16(c)(1)(i) (now 720 ILCS 5/12—16(c)(1)(i) (West 1992))) and two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1) (now 720 ILCS 5/12—14(b)(1) (West 1992))). He was sentenced to consecutive terms of six years in prison on each of the two assault charges and to one concurrent three-year prison term for the abuse count. On appeal the defendant contends that (1) his conviction of aggravated criminal sexual abuse must be reversed because it was based on the same conduct which resulted in the conviction of aggravated criminal sexual assault; (2) he is entitled to a new trial because of prejudicial misconduct by the prosecutor and his own attorney's ineffective assistance; and (3) this court must examine certain records reviewed in camera by the trial court to ascertain whether the trial court properly exercised its discretion in disclosing only a portion of those materials to the defense. We vacate the concurrent sentence of aggravated criminal sexual abuse and affirm the convictions of aggravated criminal sexual assault.

The defendant was charged by information on February 5, 1991, with aggravated criminal sexual abuse, a Class 2 felony, for allegedly fondling the vaginal area of T.K., who was eight years old at the time. The incident was alleged to have occurred on or about December 22, 1989, when T.K. and her sister, A.K., who was nine years old at the time, spent the weekend with the defendant and his three children at

the defendant's home in Davis Junction. On June 21, 1991, the defendant was charged with two additional counts arising out of the same incident as alleged in the first count. The new charges accused the defendant of two counts of aggravated criminal sexual assault, both Class X felonies, alleging that the defendant knowingly committed an act of sexual penetration with T.K. and A.K.

The defendant was a friend of the girls' mother. The girls frequently played with the defendant's daughter and often spent the night at the defendant's home with his children. The mother testified at trial that she lived with the defendant for some months in the latter part of 1990 after being evicted from her apartment but that she and the defendant were never romantically involved. She said that in August 1990 counselors for Family Advocates told her that the defendant may have molested her girls but that the defendant denied it. She did not discuss the matter with her girls because the counselors instructed her not to.

The girls' mother further testified that at first she did not believe the charges because her girls never complained to her and the defendant's own children seemed well cared for. The mother testified that she came to believe the accusations in December 1990 when T.K. told her she was worried that the defendant would "hurt the mother" as he had T.K. The mother said she then moved out of the defendant's home.

T.K. testified that on one of her overnight visits to the defendant's home the defendant tried to stick his penis into her behind but he could not. She said the defendant then put "Vicks or something" on his finger and stuck it in her behind. On cross-examination, T.K. admitted that she had earlier told the State's Attorney the defendant stuck his finger into her vagina, not her behind, but the earlier statement was a mistake. T.K. was uncertain exactly when the incident occurred and said she did not tell her mother what happened because she was afraid she would get into trouble. She admitted she does not always tell the truth but said she was telling the truth at trial.

A.K. also testified that she was not certain when the incident occurred but that it took place when she and her sister stayed overnight at the defendant's home. A.K. said she went into the defendant's bedroom to get some of her belongings out of the closet one night when the defendant called her over to sit on his bed. A.K. said the defendant then reached inside her new pair of pants that her mother had given her and touched her on her vagina. She said that it hurt, and the defendant stopped when the defendant's daughter came into the room.

A.K. said the abuse occurred more than one time and that it occurred whenever she went over to the defendant's home until her sister finally told their mother. A.K. said she did not tell her mother of the abuse.

Detective Irving Joe Drought of the Ogle County sheriff's department testified that he and Melissa Garmen, a caseworker with the Department of Children and Family Services (DCFS), conducted the initial interview with the defendant concerning the girls' accusations on February 1, 1991, at the defendant's home.

Drought said he talked with the defendant for about 40 minutes to an hour during which time the defendant denied the allegations. After that initial period, Drought said, he felt he had "reached a wall in the questioning" and asked Garmen if she had any questions. Drought said that Garmen took "a more sympathetic approach," and, after five minutes, the defendant "admitted to having fondled the girls."

Drought said the defendant told Garmen and him that the fondling had occurred on more than one occasion but the only specific occasion he could remember took place at his home when the girls were staying for the weekend. Drought said the defendant claimed he was taking a bath when the girls came into the bathroom and the defendant told them to leave. Drought said the defendant claimed the girls did not leave but took their clothes off to take a bath after he was finished. Drought said the defendant told him that, after the girls took their baths, he was sitting in the living room and the girls came out of the bathroom, sat on the couch next to him and stated that they wanted to have sex with him. Drought said the defendant then admitted that he "stuck his fingers inside of them." Drought said the defendant did not want to say where he touched the girls so Garmen handed him a diagram of a human body. The defendant made a circle around the vaginal area to indicate where he had placed his fingers inside the girls. Drought said he then arrested the defendant.

Drought said he next interviewed the defendant on February 4, 1991, in the jail where the defendant was being held, for the purpose of narrowing the date of the incident in question. Drought said the defendant again told him and Captain Robert Whipple, who accompanied him for that interview, that the defendant stuck his fingers in the girls' vaginal areas and that the incident occurred the week before Christmas in 1989. Drought said the defendant was certain of the time period because he was moving into his residence at that time, the children were home from school, and A.K. and T.K. were staying with him or helping him move.

Drought said that he took a tape recorder to the February 4 interview but that the batteries in the recorder were dead and the conversation was never taped.

Captain Whipple, a deputy sheriff in Ogle County, testified that he offered to help the defendant contact a counseling organization for the purpose of obtaining a psychological assessment relating to the molestation and that the defendant said "he would think about, that he knew that he needed counseling." Whipple said the defendant told him and Drought that he had never molested his own children, "only those two kids," apparently a reference to A.K. and T.K. Whipple said that, later in the day on February 4, 1991, he again saw the defendant outside the jail after the defendant was released on bond. At that time, Whipple said, he again offered to contact a psychological counseling organization for the defendant, who responded that "he [the defendant] did want to get help, that he didn't want to do it again."

The defendant testified that he never admitted to committing the offenses charged prior to trial; he again denied all of the charges at trial. The defendant said that the repeated questioning by Drought and Garmen on February 1 confused him and that the only incident he related to them was one occasion in December 1989 when the girls walked into the bathroom while he was taking a bath. The defendant said he demanded that the girls leave the bathroom, which they did, and nothing inappropriate occurred. He said he promptly told their mother of the incident and scolded her for it, but the mother "didn't give a hoot." The mother denied that the defendant ever told her about such an incident.

The defendant testified that he circled the vaginal area of the diagram given to him by Garmen to indicate that he understood that he was being accused of touching them in that area, but he denied that he actually had touched the girls there.

The defendant said that Whipple and Drought told him while he was in jail on February 4 that he was facing six or seven charges and that, if he pleaded guilty to one charge, he could get his bond reduced and get out of jail. The defendant said he wanted to get out of jail so he could get back his own children, who were placed in foster care when he was arrested. The defendant said he "told them [the officers] I'd plead guilty to the charge that I said what happened [sic]," apparently assuming that he was only admitting that the girls entered the bathroom while he was bathing. Whipple and Drought both denied making any offers or threats to the defendant or discussing bail with him.

The defendant testified that the girls' mother threatened to accuse him of molesting the girls after he and the mother got into an argument while she was living with him. The defendant said the girls' mother wanted him to accompany her to family counseling sessions, but he refused and ordered her to move out of his home after they argued. Drought denied that the defendant ever mentioned such threats to him. The defendant denied talking to Captain Whipple on February 4 about counseling.

The defendant's three children testified. Jonathon Hooker, age nine at trial, testified that A.K. and T.K. stayed in his sister's room when they spent the night at his home. Atha Hooker, age 11 at trial, also said A.K. and T.K. would sleep in her room when they spent the night, that they never stayed in her father's room, and the girls never complained to her about the defendant. Robert Hooker, Jr., the defendant's teenage son, testified that A.K. and T.K. were always treated the same as the defendant's own children, the girls stayed in his sister's room when visiting overnight, the girls never complained about his father, and he never saw any incidents of molestation by his father. The defendant also produced two character witnesses who testified that he had a good reputation for truth and veracity.

The jury returned guilty verdicts on all three counts charged. After a sentencing hearing, the trial court denied a motion for a new trial, and this appeal followed.

■ We agree with the defendant's first claim, that his conviction of aggravated criminal sexual abuse must be reversed. The State concedes in its brief that it was error for the trial court to permit conviction and sentencing of the defendant on both the abuse charge and aggravated assault charges because they both stem from a single act. (*People v. King* (1977), 66 Ill. 2d 551.) Because we have upheld the defendant's conviction of the greater offense of aggravated criminal sexual assault, we vacate the lesser offense of aggravated criminal sexual abuse. (See *People v. Hebel* (1988), 174 Ill. App. 3d 1.) We note that the defendant did not properly preserve this error for appeal and thus has waived it. (*People v. Enoch* (1988), 122 Ill. 2d 176, 190.) However, we address this issue under the "plain error" rule (134 Ill. 2d R. 615(a)) because to allow the sentence to stand would be fundamentally unjust.

■ The State and defendant also agree that we may review *in camera* the sealed records reviewed by the trial court to make a determination as to whether the trial court properly withheld from the defendant some confidential records prepared by the DCFS. (See *People v. Bean* (1990), 137 Ill. 2d 65; *Pennsylvania v. Ritchie* (1987), 480

U.S. 39, 94 L. Ed. 2d 40, 107 S. Ct. 989.) Our review of the withheld records satisfies us that the trial court properly exercised its authority under *Bean* to withhold as immaterial the records in question. The records contain no information that the defendant did not already have to help him prepare for trial.

We next consider the defendant's contention that his other convictions must be reversed because prejudicial errors were committed during his trial by the trial court, the prosecution, and his own attorney. The defendant's attorney did not object to the alleged errors at trial. We will consider these claims together because "plain error" and "ineffective assistance of counsel" analysis have similar standards of review.

A defendant is entitled to competent legal assistance, not perfect representation. (*People v. Markiewicz* (1993), 246 Ill. App. 3d 31, 48.) When raising a claim that an attorney rendered ineffective assistance at trial, a defendant must establish two propositions: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) the deficient performance so prejudiced the defendant that he was denied his constitutional right to a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) Illinois adopted the *Strickland* test in *People v. Albanese* (1984), 104 Ill. 2d 504, 526. Both prongs of the *Strickland* test must be satisfied before counsel will be found to have rendered constitutionally ineffective assistance. (*People v. Johnson* (1993), 154 Ill. 2d 227, 234.) There is a strong presumption that counsel's performance at trial was competent. *People v. Wright* (1992), 149 Ill. 2d 36, 46.

Further, a reviewing court need not determine whether an attorney's performance fell below the objective standard of reasonableness before determining whether the defendant suffered any prejudice. *Markiewicz*, 246 Ill. App. 3d at 48, citing *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

As to the "plain error" analysis, it is well settled in Illinois that an allegation of error on appeal is waived by a party who fails both to timely object at trial and raise the issue in a written post-trial motion. (*Enoch*, 122 Ill. 2d at 187; *Markiewicz*, 246 Ill. App. 3d at 30.) This result is tempered by the "plain error" rule (134 Ill. 2d R. 615(a)), which permits a reviewing court to consider issues waived for purposes of appeal if the evidence in a criminal case is closely balanced (*People v. Herrett* (1990), 137 Ill. 2d 195, 209) or the alleged error "is so fundamental and of such magnitude that the accused was denied a fair trial." (*Herrett*, 137 Ill. 2d at 209-10.) In both "plain error" and "ineffective assistance" analyses, therefore, the "fair trial" standard

becomes the benchmark for judging whether the defendant's conviction must be reversed. We conclude that, although some errors were made at trial, the cumulative effect of these errors was not so prejudicial as to deny the defendant a fair trial.

We begin by noting that the evidence in this case was not closely balanced. There was more than ample evidence of guilt. Both alleged victims testified that the defendant penetrated them, and two investigating officers testified that the defendant admitted the alleged acts to them. The defense consisted of a blanket denial of the charges by the defendant at trial, testimony by his children which neither directly supported nor rebutted the defendant's claims, and two character witnesses.

The defendant first contends that his trial attorney rendered constitutionally ineffective assistance in that (1) he did not interview the girls' mother prior to trial or impeach her with a prior conviction of deceptive practices; (2) he inadvertently brought out improper evidence of other uncharged criminal acts by the defendant and failed to seek a limiting instruction to the jury concerning the evidence; and (3) he failed to seek a judgment notwithstanding the verdict on the abuse charge following trial or raise a motion for a new trial.

■ The first of the ineffective assistance claims is unpersuasive. An attorney's decision as to how or whether to cross-examine a particular witness is generally a matter of trial strategy or tactics, which, by itself, will not support a claim of ineffective assistance under *Strickland.* (*People v. Stewart* (1984), 104 Ill. 2d 463, 492.) In the present matter, the defendant's attorney did cross-examine the girls' mother but apparently did not attempt to interview her either during discovery or prior to her taking the stand at trial. As we have already noted, there was ample other evidence upon which the jury could convict. Thus assuming, *arguendo*, that this prior conviction had a strong impeaching impact, which is far from clear, there remained ample evidence to support the conviction. The defendant does not suggest on appeal that there was any other helpful or exculpatory evidence to be had from the mother.

The defendant cites *People v. Hayes* (1992), 229 Ill. App. 3d 55, for the proposition that the decision of whether to present a particular witness or to pursue a line of questioning is trial strategy and, hence, not ineffective assistance, *only* if it can be determined that the attorney formed a defense theory that was appropriate under the circumstances. However, the court in *Hayes* noted that a counsel's decision not to raise a defense or present witnesses in support of that defense is not a trial tactic or strategy when that decision is attributable

to a misapprehension of the law by the attorney. (*Hayes*, 229 Ill. App. 3d at 62-63, citing *People v. Wright* (1986), 111 Ill. 2d 18, 27.) Here, there was no misunderstanding of the law by the defendant's counsel.

 Likewise unavailing for purposes of the ineffective assistance claim is the defendant's contention that he was prejudiced when his attorney brought out at trial that he had a prior conviction of criminal damage to property and when he elicited from A.K. that the defendant had molested her more than once. We believe the following excerpt from the defendant's trial testimony demonstrates that the first of these incidents was trivial and did not prejudice the defendant.

"A. *** I had to get my bond reduced. I didn't know what my bond was. I never been in—I've been in no criminal—not criminal court stuff like that, for traffic tickets is all.

Q. You had never been in any serious trouble before?

A. Criminal damage to property. I don't know when it was. I think it was on my own trailer way back. That's the only thing I know of.

A. How many years ago would you estimate that was?

Q. Oh, that's got to be close to 20 years ago."

The prior conviction bore no relation to the serious sexual assault charges the defendant faced in the present matter, and the defendant's attorney showed competence by attempting to blunt the impact of the initial admission of the damage to property charge by eliciting from the defendant that the incident occurred some 20 years earlier.

The defendant claims on appeal that the incident was similar to that in *People v. Vazquez* (1990), 194 Ill. App. 3d 516, in which ineffective assistance was found. However, that case is far different from the present matter. In *Vazquez*, the defense attorney was held to be ineffective when he had won a ruling to exclude evidence of prior drug possession offenses in a case involving the unlawful use of a weapon by a felon but then neglected at trial to object when the prosecution introduced the excluded evidence. The trial court in *Vazquez* specifically found that "it is highly prejudicial to start naming prior offenses *** when the man is standing trial for the same offense." (*Vazquez*, 194 Ill. App. 3d at 519.) The prior convictions in *Vazquez* were serious felony counts that directly related to the charges at issue. Such is not the case here.

The second incident concerning improper evidence of other crimes was more serious but did not deny the defendant a fair trial. On direct examination by the State, A.K. described a single incident of sexual penetration at the hands of the defendant, but on cross-examination, defense counsel elicited from A.K. testimony that her sister was

present on a separate occasion of molestation by the defendant. Additionally, A.K. testified on cross-examination that she was abused "whenever we went over there [the defendant's home]."

This testimony from A.K. came in response to questions by the defense attorney as to whether any person other than herself had witnessed the act for which the defendant was standing trial. The State objected to the inquiry into the other acts of abuse, but the defense insisted it had a right to inquire into whether other persons were present during the alleged abuse. The trial court overruled the State's objection and permitted the defense inquiry because, the trial court ruled, the time frame of the charged allegation was unclear.

The defense attorney was attempting to impeach A.K. when the "other crimes" testimony from A.K. came out. This attempt at impeachment was trial strategy, which alone cannot sustain a claim of ineffective assistance. (*Stewart*, 104 Ill. 2d at 492.) The fact that the strategy failed does not, by itself, mean that the defense attorney was ineffective.

The defendant also claims it was ineffective assistance for his trial attorney not to request a limiting instruction directing the jury that it could not consider the "other crimes" evidence as proof of the defendant's guilt.

Other crimes evidence may be introduced for certain limited purposes but not to demonstrate that a defendant has a propensity to commit the crime charged. (*People v. McDonald* (1975), 62 Ill. 2d 448.) The failure of an attorney to seek a limiting instruction when he is entitled to one is not a matter of discretion or trial strategy. (*Markiewicz*, 246 Ill. App. 3d at 48.) Thus, such a failure demonstrates that an attorney's performance was deficient, but it does not prove the second *Strickland* prong, that the attorney's poor performance prejudiced the defendant to such an extent that he was denied a fair trial.

Similarly, it is not always "plain error" for a court to fail to instruct the jury of a limited purpose for other crimes evidence. (*Markiewicz*, 246 Ill. App. 3d at 43.) Plain error will be found when, under analysis similar to that for ineffective assistance under *Strickland*, the defendant is deprived of a fair trial. Generally, the only instructions necessary to ensure a fair trial include the elements of the crime charged, the presumption of innocence, and the question of burden of proof. (*People v. Turner* (1989), 128 Ill. 2d 540, 562-63.) In this case, the instruction did not concern any of these areas.

The defendant also claims that it was error for the prosecutor to refer during closing argument to the other crimes evidence from A.K.

The defense attorney did not object. The State admits in its brief that the prosecutor misspoke when he claimed during closing argument that both girls had testified to multiple incidents of abuse. Only A.K. so testified. Improper remarks by a prosecutor generally do not constitute reversible error unless they are so prejudicial as to constitute a material factor in the defendant's conviction. (*People v. Baptist* (1979), 76 Ill. 2d 19.) We do not believe that the prosecutor's misstatement was so prejudicial that it was a material factor in the defendant's conviction.

■ The defendant points out in his brief that the failure by the defense attorney to object to improper remarks by the prosecution constitutes ineffective assistance when prejudice results. In support of his argument, the defendant refers us to *People v. Tillman* (1991), 226 Ill. App. 3d 1, *People v. Judge* (1991), 221 Ill. App. 3d 753, *People v. Rogers* (1988), 172 Ill. App. 3d 471, *People v. Taylor* (1993), 244 Ill. App. 3d 806, *People v. Davidson* (1992), 235 Ill. App. 3d 605, and *People v. Clarke* (1993), 245 Ill. App. 3d 99. We note that prejudice to the defendant, and not the mere failure to object to improper remarks, is required before a reversal on appeal is justified. The cases cited by the defendant are distinguishable from the present matter and, taken as a group, demonstrate generally that, under *Strickland*, ineffective assistance is most likely to result from the cumulative impact of several serious errors, rather than isolated or incidental mistakes within a trial. In the present matter, the errors that were committed do not seriously call into question the fairness of the trial.

In *Tillman*, a murder and rape case, the defendant's attorney failed to interview a number of available alibi witnesses, and the trial court indicated that strong alibi witnesses presented by codefendants were a consideration in acquitting the codefendants. Also, in *Tillman*, the defense attorney failed to completely cross-examine a medical examiner on key inconsistencies in physical evidence and the defendant's statements. When the codefendant's attorney elicited important testimony that there was no trauma to the victim's vagina or rectum, the defendant's attorney did not move to adopt the testimony. The defense counsel did not object to the admission of blood or semen samples which were objectionable. Counsel failed to object to crucial testimony of a witness who was not listed as a potential witness on the State's answer to discovery. Counsel also failed to object to the prosecution's improper closing argument that the pubic hair of the defendant was found in the crime scene when, in fact, the medical examiner only testified that the hairs were similar to the defendant's. In reversing the conviction, the appellate court in *Tillman* declared: "Although

each of the defense attorney's errors may not alone constitute ineffective assistance, the totality of counsel's deficient performance establishes ineffective assistance of counsel." *Tillman*, 226 Ill. App. 3d at 18.

In *Clarke*, cumulative errors requiring reversal included the trial court's failure to sustain the prosecutor's unsubstantiated characterization of the defendant's defense theory as "garbage" and the State's improper argument that the alleged victim's prior aggressive behavior was irrelevant when it went to the heart of the defendant's self-defense theory.

In *People v. Judge*, the appellate court reversed a conviction of aggravated criminal sexual assault because the prosecutor repeatedly insinuated while cross-examining the defendant that the defendant had an unnatural attraction to young girls. There was absolutely no basis for the insinuations.

In *Rogers*, ineffective assistance was found when the defense attorney failed to object to repeated misstatements of evidence and improper argument by the prosecution. The conviction in *Davidson* was reversed because of cumulative errors that included improper reference by the prosecution to other crimes with no evidence to support the reference, an overly narrow evidentiary ruling by the trial court, and misstatements of law and evidence. In *Taylor*, improper other crimes references were interjected in three different ways.

We also distinguish the present matter from a recent case within the Appellate Court, Second District (*People v. Park* (1993), 245 Ill. App. 3d 994), in which we reversed and remanded for a new trial the conviction of a defendant who had been found guilty of criminal sexual assault against his minor daughter. The evidence in *Park* was closely balanced. There was strong evidence that the teen-age daughter had a motive to lie. She was apparently angry with her parents for their strict discipline, specifically for their refusal to let her see a boyfriend. In addition, the trial court in *Park* improperly admitted a letter written by the complainant that accused her father of abuse. The letter was clearly self-serving, prejudicial, an inadmissible consistent statement, and cumulative of other evidence. Also, there was no evidence in *Park* that the defendant made admissions to the police. In the case at bar, the evidence of guilt was strong.

The defendant further contends that his attorney rendered ineffective assistance by failing to request a judgment notwithstanding the verdict on the abuse charge and failed to properly make a motion for a new trial on the misconception that the appellate defender would do so. We need not address the first claim as we have already

determined that the abuse count must be vacated. There was no prejudice resulting from the failure to make a new trial motion because a motion was eventually made and argued before the trial court. The motion was denied, which led to this appeal.

The defendant next claims that prejudicial error was committed when Detective Drought was permitted to testify that he believed the defendant was guilty. The defendant's attorney did not object at trial. Although the comments by Detective Drought were improper, the defendant suffered no prejudice.

On direct examination of Detective Drought by the State, the following transpired:

"Q. Okay. Now, let's talk about the purpose of this interview [with defendant on February 1, 1991]. Can you tell us what the general purpose of your visit to Mr. Hooker on that date was?

A. It was to ask him—ask him questions about the allegations concerning *** [the victims].

Q. Had you drawn any conclusions at that [beginning] point one way or another as to whether or not these allegations were true?

A. No, sir, I had not.

Q. Is it fair to say that you went there to let him know what the allegations were and to see what he had to say about them?

A. Yes, sir.

Q. Okay. At some point during your conversations with the Defendant that opinion changed, did it not?

A. Yes, sir, it did.

Q. At what point did that occur?

A. It occurred probably just before I read him his—read him his rights, I felt that he was being deceptive with us and he wasn't telling us the truth.

Q. What are you basing that opinion on?

A. Just on his behavior and his statements. He—certain things about his body language. He wouldn't look us in the eye when he would answer our questions. When he said that he wasn't doing it, there was just a lot of things, nervous behavior, grooming, things—these are all body language things that lead us to believe that someone is not telling the truth.

Q. And these are all things that—tips that you've developed in your nine years as a law enforcement officer?

A. Yes, sir.

Q. So, at the point that your opinion changed to that the Defendant was being deceptive to you [*sic*] with you, was that the point that you decided to read him his rights?

A. Yes, sir.

\* \* \*

Q. Now, you said after you had been there with him for awhile you read him his rights?

A. Yes, sir.

Q. That was at a point where you figured now you were going to arrest him?

A. That was at the point when I was sure that—that he was—that he was guilty of what the allegations were."

The defendant claims that Detective Drought's testimony as to his belief that the defendant was guilty was both inadmissible and prejudicial. We conclude that while the testimony was improper, it was not prejudicial.

A lay witness must testify only to those facts about which he has personal knowledge. (*People v. Brown* (1990), 200 Ill. App. 3d 566, 578.) Generally, a lay witness may not offer his opinion. (*People v. Linkogle* (1977), 54 Ill. App. 3d 830, 833.) Improper testimony is prejudicial when it goes to the ultimate question of fact to be decided by a jury. *Brown*, 200 Ill. App. 3d at 579.

In *Brown*, the defendant's conviction of aggravated criminal sexual assault was reversed and the cause remanded because of prejudice that resulted when the trial court permitted a witness to testify as to what the defendant likely meant when he said "have some of this." In that case, the witness walked into a bedroom where the victim and the defendant were sitting on the bed unclothed. There were others in the apartment, and several people, including the defendant, were drinking. As the witness walked into the bedroom, he testified that the defendant said "have some of this." (*Brown*, 200 Ill. App. 3d at 579.) The witness was then allowed to testify that he took "have some of this" to mean have sex with the victim, not "have a drink." (*Brown*, 200 Ill. App. 3d at 579.) In reversing the conviction, the appellate court declared that "[t]he conclusion that 'have some of this' referred only to sex or the woman was not an obvious conclusion" and resulted in reversible error. *Brown*, 200 Ill. App. 3d at 579.

■ The present matter is distinguishable. Most significantly, Detective Drought was not asked to draw any conclusions concerning a crucial fact question. Drought was not present at the alleged assault on the two girls. His comments were elicited to explain why he arrested the defendant. A police officer is generally permitted to testify

as to his investigatory procedure. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 529.) Drought was not speculating on the importance or meaning of some crucial fact or piece of evidence. We note, also, that the prosecution did not ask Drought for his conclusion about the defendant's guilt. That remark came as part of an unresponsive answer to an unobjectionable State question. In *People v. Hood* (1992), 229 Ill. App. 3d 202, an unresponsive answer by a prosecution witness was determined to be reversible error because the unresponsive remarks "were not accidental. They were deliberate tactics [by the State] that were highly prejudicial. * * * [The unresponsive] remark, of which there was no evidence, contradicted the essence of [a key witness'] testimony." (*Hood*, 229 Ill. App. 3d at 214.) In this case, there was no evidence that the prosecutor deliberately elicited the officer's comments, and the comments were not so crucial as to prejudice the defendant.

The present matter is also distinguishable from *People v. Linkogle* (1977), 54 Ill. App. 3d 830, which the defendant cites in his brief. In *Linkogle*, the appellate court reversed because the trial court permitted the mother of a prosecuting witness to testify to what she thought her daughter meant by "wriggle his thing." Again the reversible error resulted from a witness interpreting a crucial fact question.

Also distinguishable is *People v. McClellan* (1991), 216 Ill. App. 3d 1007, 1014, in which it was held improper for a trial court to permit a police officer to testify in a rape case as to his opinion that the defendant used force to compel the complainant to engage in sexual intercourse. In *McClellan*, the defendant admitted to having sex with the complainant, an adult, and the only issue was whether the sex was consensual.

The defendant's citation in his brief to *People v. Brouder* (1988), 168 Ill. App. 3d 938, not only fails to advance his position, but it argues forcefully against it. In *Brouder*, a police officer testified in a case of resisting arrest that the defendant did indeed resist arrest. This was an improper legal conclusion that went to the very basis of the charge. However, the appellate court ruled that the error did not warrant reversal because the conviction was strongly established by other competent evidence. (*Brouder*, 168 Ill. App. 3d at 945.) In the present case, the officer's comments were improper, but did not go to the heart of the charges against the defendant, and there remained other competent evidence to support the conviction.

Finally, we consider the defendant's claim that the prosecution improperly used the trial court's order barring evidence of prior sexual abuse by others to help establish the defendant's guilt.

Prior to trial, the trial court ruled that, pursuant to the Illinois rape shield statute (Ill. Rev. Stat. 1991, ch. 38, par. 115—7 (now 725 ILCS 5/115—7 (West 1992))), evidence that A.K. and T.K. had been abused by persons other than the defendant would be barred absent a showing that such evidence was specifically relevant to some issue in the case other than the fact that they had been previously molested. The defendant's attorney made no such showing.

The rape shield statute prohibits the introduction of evidence in a trial for aggravated criminal sexual assault of "prior sexual activity or the reputation of the alleged victim." (Ill. Rev. Stat. 1991, ch. 38, par. 115—7(a) (now 725 ILCS 5/115—7(a) (West 1992)).) The statute is a broad prohibition against the introduction of any evidence by either the defendant or the prosecution of prior sexual activity, except as between an alleged victim and the accused. *People v. Sandoval* (1990), 135 Ill. 2d 159.

During closing arguments, the prosecution stated:

"I think it's important for you to remember what *** [T.K.] told you the defendant did before he put his finger inside of her. She said he smeared some type of substance on his finger. Now, ladies and gentlemen, again, you've all had experience with children, some of you have children, I'd ask you to ask yourselves is that a detail a ten-year-old girl would make up? Would a ten-year-old girl know that someone might put some type of substance on their finger before they would put it inside of her? That's a question for you to ask yourselves."

The defense attorney did not object at trial, and the defendant now contends that it was unfair for the prosecutor to make such remarks when the defendant was not permitted to offer evidence of prior molestations to rebut the inference clearly raised by the prosecution that T.K. could not possibly have made up such a story and therefore was likely telling the truth.

■ We note initially that a prosecutor may properly argue facts and reasonable inferences drawn from facts even when they reflect unfavorably on the accused. (*People v. Manley* (1991), 222 Ill. App. 3d 896, 907.) In this case, the prosecutor's remarks were based on testimony at trial and a reasonable inference from that testimony. Thus, they were not improper. The defendant's claim that the comments were unfair because he was prevented from rebutting them fails because he has not shown that he had any competent rebuttal evidence to offer.

The defendant claims on appeal that he had clear evidence that other persons had molested T.K., but this alone is insufficient. The

only relevance that evidence of other molestations could have in this case would be if another molester had used a lubricant on his finger prior to assaulting the girl, because the only matter to be rebutted was whether T.K., at her young age, would be aware of such behavior. Because the defendant does not claim on appeal that the prior molestations of T.K. involved the use of a lubricant, he has not demonstrated that he had any competent evidence to offer in rebuttal. Even if he had such evidence, it would not be admissible. The proper response for a trial court when faced with a situation in which one side improperly introduces sexual history evidence in contravention of the Illinois rape shield statute is not to allow the other side to offer rebuttal evidence, but rather to strike the original evidence and admonish the jury to disregard it. (*Sandoval*, 135 Ill. 2d at 192.) We also note that the reference to T.K.'s knowledge about "Vicks" came not during testimony but during closing argument by the prosecution. The trial court instructed the jury that such arguments are not evidence.

Our supreme court acknowledged that, in the proper case, the defendant's constitutional right to confront witnesses would supersede the rape shield statute. (*Sandoval*, 135 Ill. 2d at 191-92.) These include the defendant's right to offer evidence of bias, motive, prejudice and prior inconsistent statements of the complainant. (*Sandoval*, 135 Ill. 2d at 191.) The present matter, however, is not such a case. The court in *Sandoval* also noted that "[t]his case does not present a situation in which the jury was presented with what the defendant alleges is a completely unbelievable portrait of the complainant which is only rebuttable with the introduction of the proffered testimony." (*Sandoval*, 135 Ill. 2d at 177.) Similarly, this matter is not such a case. At most, the prosecution's closing remarks bolstered T.K.'s credibility, but they did not paint a "completely unbelievable portrait" of her that could be assailed only by sexual history evidence.

Because the cumulative effect of errors committed at trial was not sufficient to deny the defendant a fair trial, we affirm the convictions of aggravated criminal sexual assault.

The judgment of the circuit court of Ogle County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

BOWMAN and COLWELL, JJ., concur.