No. 2--95--1102

______________________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

_________________________________________________________________________________

THE PEOPLE OF THE STATE       )  Appeal from the Circuit Court

OF ILLINOIS,                  )  McHenry County.

                              )

     Plaintiff-Appellee,      )

                              )  No. 94--CF--472

v.                            )

                              )

SUSAN MILLER,                 )  Honorable

                              )  Henry L. Cowlin,

     Defendant-Appellant.          )  Judge, Presiding.

________________________________________________________________________________

     JUSTICE THOMAS delivered the opinion of the court:

     

     The defendant, Susan Miller, was charged by grand jury with attempted first

degree murder (720 ILCS 5/8--4(a), 9--1(a)(2) (West 1994)), armed violence (720

ILCS 5/33A--2 (West 1994)), and two counts of aggravated battery (720 ILCS 5/12--

4(a),(b)(1) (West 1994)).  Following a jury trial in the circuit court of McHenry

County, the defendant was found guilty but mentally ill on all charges.  She was

sentenced to 25 years in prison and fined $207.  We affirm the convictions and

sentence, but award the defendant full credit against the fine.

                                   FACTS

     The facts relevant to our decision are as follows.  On June 25, 1994,

members of the McHenry County sheriff's police were dispatched to 2917 Parkview

Drive, Marengo, Illinois, in reference to a stabbing which had occurred at that

address.  Upon their arrival, they learned that Dennis Miller had suffered knife

wounds to his neck and back.  Upon further investigation, the sheriff's police

were dispatched to 405½ Prairie Street, Marengo, Illinois, where they arrested

the defendant and subsequently charged her with attempted first degree murder,

armed violence, and two counts of aggravated battery.

     A McHenry County grand jury returned a bill of indictment against the

defendant on July 6, 1994.  The State filed a motion for a fitness examination

to ascertain whether the defendant was fit to stand trial.  The trial court

thereafter issued an order directing Robert Meyer, Ph.D., to conduct a

psychological examination of the defendant for the purpose of determining the

defendant's fitness to stand trial.  Upon submission of Dr. Meyer's written

report, the trial court found the defendant competent to stand trial.  Trial was

set for May 1, 1995.

     At trial, the victim, Dennis Miller, testified that on the day in question

he had picked up his father, Henry Miller, and taken him to Dennis' residence at

2917 Parkview Drive.  They were just finishing mowing the grass, when the

defendant, Dennis' half-sister, approached the residence in her vehicle.  She got

out of her vehicle and walked toward Dennis, who was standing in the driveway. 

She accused Dennis of stealing her coin collection.  Dennis told her that he did

not have her coin collection.  Moments later, the defendant walked back to her

vehicle and got a knife.  Dennis told his father that the defendant had a knife. 

The defendant then approached Dennis and stabbed him in the neck.  Dennis knocked

her down to the ground, but she came back at him and stabbed him four more times

as Dennis wrestled with her.  At one point in their struggle, Dennis leaned over

the defendant and let the blood emanating from his wounds fall on her.  She got

up from the ground and told him, "I hope you die you son of a bitch."  Dennis

then went into his house and called 911.  He reported that he had been stabbed

by his sister and that he was bleeding badly.                   

     Henry Miller testified that the defendant was his daughter and that Dennis

was his adopted son.  He shared a residence with his daughter.  On the day in

question, he was at Dennis' house mowing the lawn.  When he was finished mowing

the lawn, he took his lawn mower into the garage.  When he came back out, the

defendant and Dennis were arguing.  Dennis said, "Watch out, she's got a knife

with her."  Henry further testified that he then took Dennis' lawn mower into the

garage.  When he came back out, he saw that Dennis had been stabbed and was

bleeding out of his neck and back.  Nobody other than the defendant and Dennis

were present at the time of the stabbing.   

     Assistant State's Attorney Terence Nader read into the record the evidence

deposition of Richard Lind, M.D.  Dr. Lind, a general surgeon, examined Dennis

in the emergency room of Woodstock Memorial Hospital, in Woodstock, Illinois,

following the stabbing.  He noted there were five stab wounds along the left side

of Dennis' body:  one in the neck, three along the posterior left chest, and one

along the lower left flank.  The neck wound was approximately four centimeters

in depth.  One of the chest wounds punctured Dennis' lung, causing it to

collapse.  The three other stab wounds were less severe.

     James Bald, a forensic scientist with the Illinois State Police Crime

Laboratory, testified as to evidence obtained from the execution of a search

warrant at the defendant's residence.  He analyzed certain articles of clothing

of the defendant and determined that they contained blood stains inconsistent

with the defendant's blood type, but consistent with Dennis' blood type.  He also

determined that blood from the driver's seat of the defendant's vehicle was

inconsistent with the defendant's blood type, but consistent with Dennis' blood

type.  

     The defendant testified on her own behalf.  She testified that, prior to

the police's arrival at her residence on the date in question, she had only been

away from her house to purchase gas at a gas station in Marengo.  She denied

having been at her brother's residence that day.  While she was being questioned

by one of the officers, she had a petit mal seizure.  She further testified that

the physical evidence retrieved from her home was planted.

     Dr. Meyer testified on behalf of the defendant.  He testified that he had

examined the defendant on several occasions and had examined past medical and

psychiatric records pertaining to the defendant.  He stated that the defendant

had suffered a head injury after being thrown from a horse in 1969.  That injury

necessitated her having intracranial surgery.  After that surgery, and as a

result of the head trauma she suffered from the fall, she developed a seizure

disorder.  He explained that a person experiencing a seizure may not remember his

or her actions because of the altered state of mind he or she experiences at the

time.

     On May 5, 1995, the jury returned a verdict of guilty but mentally ill on

all charges.  On June 12, 1995, defense counsel withdrew from the case and new

counsel entered his appearance.  The defendant filed an amended motion for a new

trial, which was argued prior to the sentencing hearing on August 11, 1995, and

denied.  Following arguments, the defendant was sentenced on the charge of

attempted first degree murder to 25 years' imprisonment and fined $207.  The

defendant's motion to reconsider sentence was denied.  She filed a timely appeal.

                                 ANALYSIS

     On appeal, the defendant raises six issues for our review.  She contends

that (1) the armed violence conviction must be vacated because it violates the

proscription against "double enhancement"; (2) the attempted first degree murder

conviction must be reversed because the State failed to prove that she possessed

the requisite intent beyond a reasonable doubt and because the trial court erred

in failing to instruct the jury on the target crime (murder); (3) the armed

violence and aggravated battery convictions must be vacated because they arose

out of the same physical act as the attempted first degree murder conviction; (4)

the sentence for attempted first degree murder should be reduced because the

trial court considered improper aggravating factors; (5) she received the

ineffective assistance of counsel; and (6) she is entitled to full credit for the

$207 fine imposed.

     The defendant initially contends that the armed violence conviction must

be vacated because it violates the proscription against double enhancement.  

     The State asserts at the outset that this issue has been waived because the

defendant failed to preserve the issue by raising it in her amended motion for

a new trial.  As a general rule, the failure to raise an issue in a written

motion for a new trial results in a waiver of that issue on appeal.  People v.

Enoch, 122 Ill. 2d 176, 186 (1988).  Having reviewed the defendant's amended

motion for a new trial, we agree with the State that the defendant failed to

raise this issue below.  While the motion for a new trial generically references

improper jury instructions, it does not specify the particular defect now raised

on appeal.  Accordingly, we deem this issue waived.  Had we not deemed this issue

waived, we would, nevertheless, resolve the issue in favor of the State.

     In People v. Haron, 85 Ill. 2d 261 (1981), battery (a misdemeanor) was

enhanced to the felony of aggravated battery based on the use of a deadly weapon. 

The aggravated battery charge was then used as the predicate felony for an armed

violence charge.  The supreme court held that the presence of a weapon could not

serve to enhance an offense from a misdemeanor to a felony and also serve as the

predicate offense for a charge of armed violence.  Haron, 85 Ill. 2d at 278.  In

People v. Del Percio, 105 Ill. 2d 372, 377 (1985), the supreme court held that

Haron also applies when a predicate felony is doubly enhanced because of the

presence of a weapon.  While a charge of armed violence (720 ILCS 5/33A--2 (West

1994)) may not be predicated on aggravated battery by use of a deadly weapon (720

ILCS 5/12--4(b)(1) (West 1994)), aggravated battery causing great bodily harm

(720 ILCS 5/12--4(a) (West 1994)) is a proper predicate felony for the armed

violence statute.  See People v. Drakeford, 139 Ill. 2d 206, 213 (1990).

     The defendant argues that the double enhancement proscription has been

violated here because (1) the charging instrument utilized language that

indicates that the armed violence charge was predicated upon aggravated battery

by use of a deadly weapon; and (2) the jury instructions permitted the jury to

convict the defendant of armed violence predicated on aggravated battery by use

of a deadly weapon.  We examine each of these contentions.

     A judgment on an armed violence charge may be reversed due to double

enhancement on the face of the charge.  See People v. Hanson, 138 Ill. App. 3d

530, 535 (1985).  In the present case, count III of the indictment read as

follows:

          "That on or about June 25, 1994, in McHenry County, State of

     Illinois, SUSAN M. MILLER committed the offense of ARMED VIOLENCE, in that

     said defendant, while armed with a dangerous weapon, a knife with a blade

     longer than 3 inches, performed acts prohibited by Illinois Compiled

     Statutes, Chapter 720, Section 5/12-4(a), in that she knowingly and

     without legal justification stabbed Dennis Miller, thereby causing great

     bodily harm to Dennis Miller, in violation of Chapter 720, Section 5/33A--

     2 of the Illinois Compiled Statutes."   

Contrary to the defendant's assertion, we do not find the charging instrument to

reflect that the armed violence charge was predicated upon aggravated battery by

use of a deadly weapon.  Rather, the language evidences that it was properly

predicated upon aggravated battery by way of great bodily harm.  Not only does

the indictment utilize "great bodily harm" language, but it also cites section

12--4(a) of the Criminal Code of 1961 (Criminal Code), which pertains to

aggravated battery based on great bodily harm.  See 720 ILCS 5/12--4(a) (West

1994).  It does not cite section 12--4(b)(1) of the Criminal Code, which pertains

to aggravated battery by use of a deadly weapon.  See 720 ILCS 5/12--4(b)(1)

(West 1994).  We conclude that the charging instrument did not violate the

proscription against double enhancement.

     The defendant also contends that, because the jury instructions did not

limit the jury to consideration solely of aggravated battery based upon great

bodily harm as the predicate for the armed violence charge, the jury might very

well have considered the predicate felony to be aggravated battery based upon the

use of a deadly weapon in contravention of Haron, 85 Ill. 2d 261.  The defendant

insists that her conviction of armed violence cannot stand because the jury's

verdict did not indicate whether the underlying felony of aggravated battery was

based on the theory that she had used a deadly weapon or on the theory that she

had caused great bodily harm.

     We note that the defendant did not object to the jury instructions at trial

and her motion for a new trial did not identify the particular instruction at

issue as erroneous.  Additionally, she did not tender any alternative

instructions to the court.  Each of these failures is fatal to the preservation

of the issue for appellate review.  People v. Thurman, 104 Ill. 2d 326, 329

(1984); People v. Berry, 99 Ill. 2d 499, 503 (1984).  Supreme Court Rule 451(c),

however, allows for the excusal of the waiver doctrine if "substantial defects"

in the instructions are alleged.  See 134 Ill. 2d R. 451(c).  In light of the

defendant's allegations, we will review her contention on the merits.  

     Here, the instruction for armed violence read as follows:

          "To sustain the charge of Armed Violence, the State must prove the

     following propositions:  

          First:  That the defendant committed the offense of Aggravated

     Battery; and,

          Second:  That when she committed the offense of Aggravated Battery

     she was armed with a dangerous weapon."

As such, the instruction fails to limit the jury to consideration solely of

aggravated battery based upon great bodily harm as the predicate for the armed

violence charge.  We therefore find the jury instruction to have been improper. 

Nevertheless, because we find such error to have been harmless, we find no basis

for reversal of the armed violence conviction.  Here, the jury signed separate

verdict forms finding the defendant guilty of aggravated battery based upon great

bodily harm and of aggravated battery based upon the use of a deadly weapon.  The

jury therefore explicitly found that the defendant committed aggravated battery

based upon great bodily harm.  This finding establishes that the jury found facts

forming a proper basis for the armed violence conviction.  See People v. Damnitz,

269 Ill. App. 3d 51, 62 (1994).  Thus, the conviction of armed violence will not

be vacated on the grounds that the jury instructions were improper.     

     The second contention of the defendant on appeal is that the attempted

first degree murder conviction must be reversed because the State failed to prove

that she possessed the requisite intent beyond a reasonable doubt and because the

trial court erred in failing to instruct the jury on the target crime (murder).

     A conviction must be based upon proof beyond a reasonable doubt.  People

v. Foules, 258 Ill. App. 3d 645, 653 (1993).  The reviewing court's duty is not

to ask itself whether it believes the evidence establishes guilt, but whether the

evidence viewed in a light most favorable to the prosecution would allow any

rational trier of fact to find the essential elements of the crime proved beyond

a reasonable doubt.  Foules, 258 Ill. App. 3d at 653.  A reviewing court may not

substitute its judgment for that of the trier of fact on questions involving the

weight of the evidence or the credibility of the witnesses.  People v. Winfield,

113 Ill. App. 3d 818, 826 (1983).  The reversal of a conviction is required only

where the defendant can show that the evidence is so unsatisfactory or improbable

as to create a reasonable doubt of the defendant's guilt.  People v. Murray, 194

Ill. App. 3d 653, 656 (1990).

     The defendant first argues that the attempted first degree murder

conviction must be reversed because the State failed to prove beyond a reasonable

doubt that she acted with the specific intent to kill Dennis. 

     A defendant's specific intent to kill is an essential element of the

offense of attempted murder, and it must be proved beyond a reasonable doubt. 

People v. Okundaye, 189 Ill. App. 3d 601, 606 (1989).  The specific intent to

kill may be inferred from the surrounding circumstances, including the character

of the assault upon the victim, the use of a deadly weapon, and other relevant

matters.  People v. Treadway, 138 Ill. App. 3d 899, 902 (1985).

     In the case at bar, the defendant approached Dennis with a knife and

stabbed him in the neck.  After she was knocked to the ground, she came back at

him and stabbed him four more times.  One of the later stabs punctured Dennis'

lung.  Before leaving the scene of the incident, the defendant told Dennis, "I

hope you die you son of a bitch."  The inescapable conclusion to be drawn from

the defendant's conduct in the present case is that she acted with the specific

intent to kill her brother.  

     The defendant cites People v. Jones, 184 Ill. App. 3d 412 (1989) and People

v. Thomas, 127 Ill. App. 2d 444 (1970) for the proposition that the evidence may

be insufficient to sustain a conviction of attempted murder despite grave

injuries to the victim.  Those cases are distinguishable from the case at hand. 

In Jones, the defendants beat the victim with a gun.  The court noted that the

defendants had a gun and a knife but did not use the knife or fire the gun.  The

court therefore concluded that the character of the attack was not the type that

justifies an inference of an intent to kill.  Jones, 184 Ill. App. 3d at 430. 

Here, the defendant possessed and used a knife, thus evidencing an intent to

kill.  In Thomas, the defendant attacked the victim with a knife but only stabbed

her in the shoulder.  In this case, by contrast, the stabbings were more serious,

having been directed to the neck and to the chest.  

     The defendant additionally argues that the attempted first degree murder

conviction must be reversed because the trial court erred in failing to instruct

the jury on the target crime (murder).

     We note that the defendant did not object to the instructions at trial and

her motion for a new trial did not raise this issue.  These failures are fatal

to the preservation of the issue for appellate review.  Thurman, 104 Ill. 2d at

329; Berry, 99 Ill. 2d at 503.  Supreme Court Rule 451(c), however, allows for

the excusal of the waiver doctrine if "substantial defects" in the instructions

are alleged.  See 134 Ill. 2d R. 451(c).  In light of the defendant's

allegations, we will review her contention on the merits.  

     Here, the trial court instructed the jury on "attempt," but did not

instruct the jury on the target crime, "murder."  Citing People v. Kraft, 133

Ill. App. 3d 294 (1985), the defendant maintains that the trial court erred in

not instructing the jury on murder.  In Kraft, the Appellate Court, First

District, stated:

     "However, problems have arisen in the past from the fact that in an

     attempted murder trial the jurors must be instructed not only on the crime

     of attempt [citation] but also on the target crime attempted, here murder

     ([citation]; People v. Koshiol (1970), 45 Ill. 2d 573, 262 N.E.2d 446)." 

     Kraft, 133 Ill. App. 3d at 298-99.  

We decline to follow Kraft because we find its interpretation of Koshiol as

requiring instruction on the target crime murder in an attempted murder case to

be flawed.  In Koshiol, the issue was whether the trial court erred in

instructing the jury on the target crime murder where the defendant was charged

with attempted murder.  The supreme court found no error in the instruction

already given.  It did not state that the failure to give such an instruction

would constitute reversible error.  See Koshiol, 45 Ill. 2d at 579.  We therefore

find no error in the trial court's having failed to instruct the jury on

"murder."

     The defendant argues that, without the murder instruction, the jury lacked

instruction on the requisite culpable mental state for attempted murder.  We

disagree.  Here, the trial court instructed the jury on "attempt murder," and

such instruction included the requirement that to sustain the charge of attempted

first degree murder the State had to prove not only "[t]hat the defendant

performed an act which constituted a substantial step toward the killing of an

individual" but also "[t]hat the defendant did so with the intent to kill the

individual."           

     The defendant further argues that the trial court improperly allowed the

prosecutor to misstate the culpable mental state required where the charge is

attempted murder.  During direct examination of Dr. Lind, the prosecutor asked

Dr. Lind what would have occurred had the victim's carotid artery been severed. 

Defense counsel objected on speculation grounds.  The prosecutor replied:

          "Given the proximity of this wound so close to the carotid I think

     it is important for the jury to understand the significance of the wound

     and also it reflects the intent to kill.  I believe it bears on whether or

     not this injury caused serious bodily injury, great bodily harm whether it

     could have, whether it could have resulted in death."

The defendant argues that the prosecutor's remarks may have misled the jury and

predisposed the jury to find her guilty of attempted murder even though it

believed her only intent was to inflict great bodily harm.  We disagree.  The

prosecutor clearly referenced the requisite state of mind necessary for a

conviction of attempted murder, intent to kill.  The additional verbiage of the

prosecutor merely related to one of the aggravated battery charges against the

defendant.     

     The third contention of the defendant on appeal is that the armed violence

and aggravated battery convictions must be vacated because they arose out of the

same physical act as the attempted first degree murder conviction.

     In Illinois, it is well established that multiple convictions of both armed

violence and the underlying felony cannot stand where a single physical act is

the basis for both charges.  People v. Massey, 219 Ill. App. 3d 909, 912 (1991). 

However, when more than one offense arises from a series of incidental or closely

related acts and the offenses are not, by definition, lesser included offenses,

convictions with concurrent sentences can be entered.  People v. King, 66 Ill.

2d 551, 566 (1977).  

     In this case, the defendant stabbed her victim five times within a brief

period of time.  Initially, she stabbed Dennis in the neck.  After having been

knocked to the ground, she came at him again and stabbed him four more times as

they struggled.  The defendant argues that the stabbings constituted a single

physical act which could lead only to one conviction.  The State, on the other

hand, argues that each stabbing was a separate act which could lead to multiple

convictions.  

     We find this issue to be controlled by the outcome in People v. Mayes, 257

Ill. App. 3d 137 (1993).  In Mayes, the defendant stabbed the victim three times

in the back and once in the forearm during a struggle which lasted several

minutes.  When presented with the identical issue of whether each of the stab

wounds constituted separate acts or all of the stab wounds together constituted

the same physical act, the Appellate Court, First District, concluded that

multiple stabs constituted separate acts which could support separate

convictions.  Mayes, 257 Ill. App. 3d at 154.  Accordingly, we find the

defendant's actions in this case to have constituted separate acts which could

support separate convictions.

     The defendant argues that, even if this court finds the stabbings to have

constituted separate acts, her aggravated battery convictions must be vacated

because they are lesser included offenses of attempted murder.  We disagree.

     One offense is a lesser included offense only if all of its elements are

entirely included in the greater offense.  Blockburger v. United States, 284 U.S.

299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182 (1932).  Under the Blockburger

standard, aggravated battery cannot be considered a lesser included offense of

attempted murder because all of the elements of aggravated battery are not

encompassed in the offense of attempted murder.  See Mayes, 257 Ill. App. 3d at

155.  Even if aggravated battery could be a lesser included offense of attempted

murder when based on the same physical act, such would not be the case where, as

here, each offense can be attributed to a separate act.  One stab wound can

support the attempted murder conviction, and others can support the aggravated

battery convictions.

     A fourth contention of the defendant on appeal is that the 25-year sentence

for attempted first degree murder should be reduced to the minimum 6-year

sentence because the trial court considered improper aggravating factors.

     A trial court is vested with considerable discretion in imposing a

sentence, and a sentence consequently will not be modified on appeal in the

absence of an abuse of that discretion.  People v. Boclair, 225 Ill. App. 3d 331,

335 (1992).  For a reviewing court to modify a sentence within the statutory

limits, it must appear to the reviewing court that the sentence imposed is a

clear departure from the spirit and purpose of the fundamental law and the

constitutional requirement that the sentence be proportionate to the nature of

the offense.  People v. Luna, 234 Ill. App. 3d 544, 550 (1992).  A sentence is

presumptively correct, and only where such a presumption has been rebutted by an

affirmative showing of error will a reviewing court find that the trial court has

abused its discretion.  Luna, 234 Ill. App. 3d at 550-51.  

     In the case at hand, the defendant was convicted of attempted first degree

murder, a Class X felony.  See 720 ILCS 5/8--4(c)(1) (West 1994).  The possible

range for a Class X felony is a term of imprisonment not less than 6 years and

not more than 30 years.  (730 ILCS 5/5--8--1(a)(3) (West 1994)).  The defendant

was sentenced to 25 years' imprisonment.

     In its judgment order, the trial court noted the following aggravating

factors: (1) that the defendant inflicted or attempted to inflict serious bodily

injury to another person; and (2) that the sentence was necessary to deter others

from committing the same crime.  The defendant takes issue with each of these

factors.  We note that the defendant failed to interpose a timely objection at

the sentencing hearing for what she now contends were improper sentencing

considerations.  As such, the issue has been waived.  See People v. Russell, 143

Ill. App. 3d 296, 304 (1986).  Had we not deemed the issue waived, we would

decide this issue in favor of the State.

     The defendant first asserts that the trial court improperly considered as

an aggravating factor that the defendant inflicted or attempted to inflict

serious bodily injury to another person because it is implicit within the offense

for which she was charged, aggravated battery causing great bodily harm.  We

cannot agree.  The severity of sentence depends upon the degree of harm caused

to the victim and as such may be considered as an aggravating factor in

determining the exact length of a particular sentence, even in cases where

serious bodily harm is arguably implicit in the offense of which a defendant is

convicted.  People v. Saldivar, 113 Ill. 2d 256, 269 (1986).  

     The defendant next asserts that the trial court improperly considered as

an aggravating factor that the sentence was necessary to deter others from

committing the same crime because the defendant was found mentally ill and the

sentence could not possibly deter others who are mentally ill from committing

such acts.  In support of her assertion, the defendant cites People v. Martin,

119 Ill. 2d 453 (1988).  In Martin, the trial court considered as an aggravating

factor at sentencing that the sentence was necessary to deter others.  The

supreme court found that factor to have marginal applicability to the

circumstances surrounding the offense because the defendant was convicted of

involuntary manslaughter.  Finding it is exceedingly difficult to deter

unintentional conduct, the supreme court stated that an enhanced penalty would

have very little, if any, deterrent effect on potential offenders.  Martin, 119

Ill. 2d at 459.  Martin is distinguishable from the case at hand, which involved

intentional conduct by the defendant.  Moreover, the defendant cites no authority

for the proposition that a trial court is prohibited from considering the

deterrence factor in sentencing a defendant who is found guilty but mentally ill. 

 

     In this case, the trial court was in a superior position during the course

of the trial and the sentencing hearing in aggravation and mitigation to make a

sound determination regarding punishment.  The record reflects that the

defendant's conduct caused the victim substantial harm through the infliction of

a total of five knife wounds.  The sentence imposed was well within the

legislative limitations.  We find that there was no abuse of discretion by the

trial court in sentencing the defendant to 25 years' imprisonment.

     The fifth contention of the defendant on appeal is that she received the

ineffective assistance of counsel.

     A defendant is entitled to competent legal assistance, not perfect

representation.  People v. Hooker, 253 Ill. App. 3d 1075, 1082 (1993).  There is

a strong presumption that counsel's performance at trial was competent.  Hooker,

253 Ill. App. 3d at 1082.  Mistakes in trial strategy or tactics or in judgment

do not of themselves render the representation incompetent.  People v.

Hillenbrand, 121 Ill. 2d 537, 548 (1988).  Trial counsel's representation must

be deemed effective unless counsel's performance is both defective and

prejudicial to the defense.  Strickland v. Washington, 466 U.S. 668, 687, 80 L.

Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).  A defendant claiming he was

denied the effective assistance of counsel must demonstrate that defense

counsel's conduct was professionally deficient or objectively unreasonable and

a reasonable probability exists that, but for counsel's errors, the result of the

proceeding would have been different.  People v. Gwinn, 255 Ill. App. 3d 628, 632

(1994).

     Here, the alleged instance of ineffective assistance of defense counsel is

the failure to pursue the alibi defense offered by the defendant.  The defendant

claims to have been absent from the scene of the crime.  She claims to have gone

to a nearby gas station on the day in question, opening the possibility that she

was at the station at the time of the incident.  When defense counsel initially

explored this alibi defense, he learned that the station records pertaining to

the date in question had been destroyed as was customarily done by the business

every 30 days.  The defendant claims that the records could have demonstrated her

whereabouts on the date and time in question and that her counsel was ineffective

for not securing the records before they were destroyed and for not presenting

the alibi defense.  We find the defendant's contention to be wholly without

merit.

     In this case, the subject attack was witnessed by the victim and the father

of both the victim and the defendant.  They each identified the defendant as the

perpetrator.  Nevertheless, the defendant claims to have been absent from the

scene.  A conviction may rest upon the testimony of a single witness, if positive

and credible, even though his testimony is contradicted by the accused.  Murray,

194 Ill. App. 3d at 656.  Furthermore, the victim's blood was found in the

defendant's vehicle and on her clothing.  In light of this eyewitness testimony

and physical evidence, we find that defense counsel's representation of the

defendant was not defective for his having elected not to pursue the defendant's

alleged alibi defense.  Accordingly, we find no ineffective assistance of

counsel.    

     The final contention of the defendant on appeal is that, under section 110-

-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110--14 (West 1994)),

she is entitled to a $5-per-day credit against the $207 fine imposed upon her for

the 403 days of incarceration she served prior to sentencing.  She argues that

she is entitled to a full credit against the fine.  The State argues that the

defendant has waived her right to any credit by failing to request it in the

proceedings below.

     Prior to January 1, 1994, section 110--14 required the clerk of the court

to provide defendants with notice of their eligibility for the $5-per-day credit

at the time of conviction.  See 725 ILCS 5/110--14 (West 1992).  In cases where

the clerk failed to notify the defendant of the credit entitlement, the

defendant's failure to seek the credit at the trial level or in a post-trial

motion did not preclude the raising of the issue on appeal.  See People v.

Sinnott, 226 Ill. App. 3d 923, 935 (1992); People v. Joseph, 176 Ill. App. 3d

636, 642 (1988).

     Here, the defendant argues that she cannot be precluded from raising the

credit entitlement issue on appeal because she was not informed by the circuit

clerk of its availability.  This argument must fail, because effective January

1, 1994, the notification requirement was deleted from section 110--14.  See 725

ILCS 5/110--14 (West 1994).  

     Citing People v. Toolate, 274 Ill. App. 3d 408 (1995), the State argues

that the defendant waived her right to any credit by failing to seek it at time

of sentencing.  In Toolate, the Appellate Court, Fourth District, held that, in

light of the January 1, 1994, amendment eliminating the circuit clerk's duty to

notify defendants of the credit, normal rules of waiver should apply to this

issue.  Toolate, 274 Ill. App. 3d at 409.  Other panels of the appellate court

have declined to follow Toolate, opting instead to grant the credit despite the

failure to raise the issue below.  See People v. Scott, 277 Ill. App. 3d 565, 566

(3d Dist. 1996); People v. Woodard, 276 Ill. App. 3d 242, 247-48 (5th Dist.

1995).  These cases reasoned that, because the defendants had a clear statutory

right to the credit and granting it was a simply ministerial act, there was no

reason to deny the credit.  See Scott, 277 Ill. App. 3d at 566; Woodard, 276 Ill.

App. 3d at 247-48.  In a recent decision of this court, we too declined to follow

Toolate.  See People v. Siedlinski, 279 Ill. App. 3d 1003 (1996).  Although our

reasoning differed from that of the Scott and Woodward courts, we too refused to

deny a defendant's request, made for the first time on appeal, for the $5-per-day

credit for days served prior to sentencing.  In keeping with our decision in

Siedlinski, we determine that the defendant is entitled to full credit against

the $207 fine imposed upon her for time served prior to sentencing.      

                                CONCLUSION

     For the foregoing reasons, we affirm the defendant's convictions and

sentence, but award her full credit against the $207 fine. 

     Affirmed as modified.

     McLAREN, P.J., and INGLIS, J., concur.