Fourth Division

January 28, 1999

No. 1-97-3938 

THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THNE

) CIRCUIT COURT OF

Plaintiff-Appellee, ) COOK COUNTY.

)

v. ) 

)

MICHAEL DARBY, ) HONORABLE

) JAMES SCHREIER,

Defendant-Appellant. ) JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court: 

In a bench trial, Michael Darby (Darby) was found guilty of two counts of aggravated criminal sexual assault and one court of aggravated kidnapping.  He was sentenced to consecutive terms of six years on the two counts of aggravated criminal sexual assault and one concurrent six year term on the aggravated kidnapping conviction.  He raises issues that require us to examine a legislative act commonly referred to as the rape shield statute (725 ILCS 5/115-7 (West 1996)).  We affirm.

FACTS
 

The charges arose out of an incident which occurred on October 12, 1995, between Darby and a minor, A.B., in Darby's apartment at 1350 W. Jarvis in Chicago.

Before Darby's trial, defense counsel was provided discovery, which included a file showing A.B.'s involvement with the Department of Children and Family Services (DCFS).  This file contained information regarding a child abuse report which alleged that A.B. and her half sister, E.B., had been sexually abused by E.B.'s grandfather in December 1994 and January 1995.  

The report alleged the grandfather had fondled the children over their clothing.  In the course of the investigation of this report, both A.B. and E.B. were examined by Dr. Lorand at the Cook County Hospital on October 27, 1995.  Based on this examination, it was Dr. Lorand's medical opinion that both E.B. and A.B. had been sexually abused.  Dr. Lorand told a DCFS caseworker the medical evidence indicated sexual penetration, not consistent with digital penetration.  Dr. Lorand's records simply say her findings are consistent with sexual abuse.  Based on Dr. Lorand's findings, A.B., E.B., and their brother, C.B., were placed in protective custody with DCFS.

The file indicates that A.B., after this examination, told police no one other than E.B.'s grandfather ever touched her vaginal area.  She insisted E.B.'s grandfather touched her only over her clothes.

On July 29, 1997, just before trial, the State brought a motion 
in
 
limine
 to exclude any reference to the prior report of sexual abuse by E.B.'s paternal grandfather.  Defense counsel objected, arguing the information was admissible under 
People v. Grano
, 286 Ill. App. 3d 278, 676 N.E.2d 248 (1996), because the prior accusation was false.  The trial court said it would admit the evidence if defense counsel could show the prior complaint was false.  Defense counsel said he would be unable to do this since the grandfather was too ill to come to court.  The judge offered defense counsel a short continuance, but this offer was not accepted.

No one mentioned Dr. Lorand's October 27, 1995 finding that both E.B. and A.B. had been sexually, not digitally, abused by penetration.  Admissibility of this information never was discussed. 

The State moved to exclude any reference to "fighting" going on between DCFS and A.B.'s mother with regard to her ability to care for her daughter.  Though A.B. was still in foster care at the time of trial, the State said it did not believe the family situation was relevant to the issues in Darby's trial.

Again, defense counsel objected.  He said the abuse of A.B. by her mother was an important aspect of the defense case.  It was his intention, he said, to show A.B.'s accusations against Darby were due to "transference," that is, A.B. blaming someone else for an abusive home situation.

The court agreed with the State that A.B.'s family situation was not relevant.  The court said defense counsel's claim of transference was too speculative.  Still, because it was a bench trial, the court said it would allow some questions regarding abuse by the mother and determine at that time what, if any, relevance the evidence had.

Darby's bench trial began.  Nine-year-old A.B. was found competent to testify.  She then testified that in October 1995, when she was eight years old, she lived with her mother, her grandmother, two siblings, and an elderly woman named Hilda.  The apartment they lived in was across the hall from Darby's apartment.  

A.B. said at about 1:30 p.m. on October 12, 1995, she left her apartment with the intention of going to Georgie's, a local restaurant, to buy some lunch.  No one in her family was at home except Hilda.  A.B. met Darby in the hallway.  He asked her where she was going and, when she told him, he decided to accompany her.  After purchasing some food at Georgie's, A.B. and Darby returned to Darby's apartment, where they watched television and ate.  A.B. said she asked Darby to keep the apartment door open so she would know when her grandmother got home, but Darby refused.

When they were finished eating, A.B. said, Darby picked her up and took her to his bedroom.  He placed her on the bed and, pinning her with his body, began kissing her on her lips and neck.  A.B. said she struggled to get away and asked Darby to stop, but he refused and kept her pinned on the bed.  Darby then pulled down A.B.'s pants and underwear.  First he digitally penetrated her vagina, then he penetrated her with his tongue.  After this happened, A.B. said, she was able to push Darby off her far enough to escape.  She pulled up her pants and ran home.

A.B. said she didn't immediately tell anyone what happened because Hilda was the only one at home at that time.  The next day, however, A.B. told her mother.  A.B. said her mother took her to a police station, where A.B. repeated her story to an officer.  The police officer then took her to the hospital, where a doctor examined her.

On cross-examination, defense counsel asked A.B.:  "[W]hile you were living with your mother, did anyone besides [Darby] ever do that to you?"  The State objected.  The court then allowed defense counsel to tailor the question to: "Did anyone besides [Darby] put their finger inside you?  A.B. answered, "No."

A.B.'s mother, Carmen, also testified.  She said A.B. told her on October 13, 1995, that Darby had sexually assaulted A.B. the previous day.  Carmen said she took A.B. to the police station and the police took them to the hospital.  At the hospital, Carmen said, she was present when the doctor examined A.B. and was able to observe that A.B.'s vaginal area was swollen and irritated.

It was stipulated by the parties that Dr. Karen Sheehan, if called, would testify she examined A.B. on October 13, 1995, at Children's Hospital.  She observed A.B.'s vaginal area was red and irritated and A.B.'s hymen was torn.  Dr. Sheehan would further testify that it was her opinion the redness, irritation, and damage to A.B.'s hymen were consistent with digital penetration of the vagina and that this would have occurred recently, 
i.e.
, within a day.

Defendant testified in his own defense.  He admitted he had gone to Georgie's with A.B. to get some food on October 12, 1995, but said this occurred around 2:30 p.m., after he took his girl friend to work.  After purchasing food, Darby said, they returned to his apartment and ate the food in the kitchen.  When they were done eating A.B. returned home.

Later, at about 3:30 in the afternoon, Darby said he received a call from his girl friend, Jenny, to meet her at her job.  A.B. saw Darby leaving and asked if she could go along.  Darby said he got permission from A.B.'s grandmother, Karen, before taking A.B. with him to the Starbuck's store where Jenny worked.  Darby denied touching A.B. in a sexual manner or restraining her in any way.  He said he asked A.B., during the car ride to Starbuck's, when A.B. was going to put a stop to the abuse she was receiving at home.

Darby's girl friend, Jenny Williamson, also testified.  She said she worked at Starbuck's and on October 12, 1995, began work at 2 p.m.  She said she had been home until about 1:45, when Darby drove her to work.  Later, at about 3:10 p.m., she called Darby to come back and take her out for an early lunch break.  She said Darby returned to Starbuck's at about 3:30 p.m. and brought A.B. with him.  Jenny said A.B. was wearing a one-piece outfit and was in high spirits.  Jenny said Michael and A.B. waited for her for about an hour, while she met with her district manager.  Then, when she realized she wasn't going to be able to get away, she told Darby and A.B. to go home.  Jenny testified briefly to an incident she witnessed between A.B. and A.B.'s mother.  Jenny said Carmen yelled at A.B. because her pet had an accident on the floor.

In rebuttal, it was stipulated by the parties that Assistant State's Attorney Johnson and Detective Gavin, if called, would testify that on October 14, 1995, they questioning Darby after his arrest.  At that time, Darby told them he watched television with A.B. on October 12, 1995, while she ate some french fries.  Darby also told them that A.B. asked him to "flip" her after she finished eating.  Darby said he tried to toss A.B. in the air, but she was too heavy.  Darby suggested A.B.'s accusations of sexual abuse stemmed from her misunderstanding of his intentions when he was holding her to "flip" her.

After hearing all of the evidence, the trial judge found defendant guilty of two counts of aggravated criminal sexual assault and one count of aggravated kidnapping.  Darby was sentenced to consecutive terms of six years on the two counts of aggravated criminal sexual assault and one concurrent term of six years on the aggravated kidnapping conviction.

Now, on appeal, Darby raises four issues: (1) whether he received ineffective assistance of counsel; (2) whether the trial court erred when it excluded certain evidence; (3) whether remarks made by the prosecutor unfairly prejudiced him; and (4) whether he was proved guilty beyond a reasonable doubt.

DECISION

1. 
Ineffective Assistance of Counsel

Darby contends his trial counsel was ineffective.  He says his counsel's challenge to the State's motion 
in
 
limine
 to exclude evidence of prior sexual abuse on the basis of 
People v. Grano
 (prior false complaint) was a serious error and demonstrates his counsel's general lack of knowledge of his case.

Darby also contends his trial counsel failed to subject the State's case to meaningful adversarial testing.  He says it was error for counsel to have stipulated to Dr. Sheehan's medical opinion that A.B.'s injury was consistent with recent digital penetration.  Darby now says counsel should have called Dr. Lorand as a witness to testify regarding her October 27, 1995, medical finding that both A.B. and E.B. had been sexually penetrated in a manner inconsistent with digital penetration.  

Other errors allegedly committed by trial counsel are: stipulating to the testimony of Detective Gavin and Assistant State's Attorney Johnson; failing to call Hilda or Carmen's mother, Karen, as a witness; and failing to present any evidence to explain why A.B. would falsely accused him.

None of Darby's arguments is persuasive.  To prove ineffective assistance of counsel, a defendant must show not only that his counsel made serious errors, but that he was prejudiced by the errors.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); 
People v. Albanese
, 104 Ill. 2d 504, 525-26, 473 N.E.2d 1246 (1984).  To have been prejudiced, the defendant must prove there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  
People v. Griffin
, 178 Ill. 2d 65, 74 (1997).  Darby is unable to meet either prong of the 
Strickland
 standard.  

We do not find defense counsel's 
People v. Grano
 response to the State's motion to exclude prior sexual abuse evidence an indication of counsel's lack of knowledge of defendant's case.  

Pursuant to the statute commonly known as the rape shield statute (725 ILCS 5/115-7 (West 1996)), "[i]n prosecutions for predatory criminal sexual assault of a child *** the prior sexual activity or the reputation of the alleged victim is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim with the accused when this evidence is being offered by the accused upon the issue of whether the alleged victim consented to the sexual conduct with respect to the offense alleged; or (2) when constitutionally required to be admitted."

In 
People v. Grano
, the court held the rape shield statute does not apply to evidence the complainant falsely accused others of improper sexual advances.  The 
Grano
 court reversed the defendant's conviction, holding evidence of prior false accusations by the complainant were admissible to attack the witness's credibility. 

In this case, defense counsel took the position at trial that A.B.'s mother, when she came under scrutiny by DCFS, lodged a false report of sexual abuse (fondling) against E.B.'s grandfather.  This was not an unreasonable position to take.  It fit the defense theory of the case.  The report against the grandfather was not confirmed by extrinsic evidence and no legal action was taken against the grandfather.  Defense counsel argued the inference to be drawn from these facts was that the accusation against the grandfather was false and that it showed a pattern -- that Carmen would falsely accuse someone of wrongdoing to deflect the focus of a DCFS investigation from herself.  The evidence did not support the claim.

On appeal, for the first time, Darby contends Dr. Lorand's examination of the girls on October 27, 1995, and her belief that both girls had been sexually penetrated were evidence the allegations against the grandfather were true.  

The State does not dispute the assertion that defense counsel was aware of Dr. Lorand's examination.  Trial counsel listed as a possible witness Gloria Lewis, the DCFS investigator who placed the children in protective custody after Dr. Lorand's medical findings.  

Assuming then, for the purposes of the ineffective assistance of counsel claim, counsel had this information, we find no error in counsel's failure to offer it at trial. 

Our review of the record, including the DCFS file, convinces us that Dr. Lorand's medical findings were correctly treated by everyone as an independent source of abuse, unrelated to the report against the grandfather.  The grandfather was accused of fondling the girls over their clothing months earlier.  No allegations of penetration were made against him.  A.B.'s mother, Carmen, said she discontinued visitation between the girls and the grandfather months prior to the medical examination.  The record also suggests DCFS placed all of Carmen's children in protective custody immediately after Dr. Lorand's medical examination of the girls precisely because DCFS did not know the source of abuse revealed by the examination.

Darby faults trial counsel for not calling Dr. Lorand to testify regarding her October 27, 1995 examination of A.B.  He says Dr. Lorand's medical findings could have cast doubt on Dr. Sheehan's diagnosis or somehow demonstrate A.B.'s motive to falsely accuse Darby.  We disagree.

Before the failure to call a witness can be said to be ineffective assistance, it must be shown the witness's testimony would be relevant and admissible.  We think Dr. Lorand's testimony was neither.

Dr. Lorand's examination of A.B. occurred about two weeks after the incident involving Darby.  It was not temporally relevant and could not have contradicted Dr. Sheehan's observation of recent irritation consistent with digital penetration.  Nor did Dr. Lorand's examination rebut A.B.'s testimony against Darby or explain how A.B. came to have knowledge of digital penetration. 

Dr. Lorand's examination of A.B. was evidence of other sexual abuse -- whether related to the investigation of the grandfather or an independent source of abuse.  Pursuant to the rape shield statute, then, it was admissible only if it was "constitutionally required to be admitted."

To determine when collateral evidence of sexual activity is "constitutionally required to be admitted" we look first to 
People v. Sandoval
, 135 Ill. 2d 159, 552 N.E.2d 726 (1990).

In 1990, when 
Sandoval
 was decided, the rape shield statute did not contain the term, "constitutionally required to be admitted."  Yet our supreme court recognized the statute, to pass constitutional muster, could not be interpreted in a way that  denied a defendant his right to confront witnesses against him or prevent the defendant from presenting his theory of the case.  After quoting extensively from 
Davis v. Alaska
, 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974), the 
Sandoval
 court said:

"[N]ot even a statute can be used to shelter a witness whose motive, prejudice or bias may affect testimony before the court.  The emphasis of 
Davis
 was not to 
create
 an exception to the statutory protection, but to 
prevent
 the statute from creating an exception to the well-settled and accepted admissibility of the motive, bias or prejudice of a particular witness."  (Emphasis in original).  
People v. Sandoval
, 135 Ill. 2d at 175.

Following the decision in 
Sandoval
, the legislature acted on the court's recognition that a defendant's constitutional right to confront witnesses must, in certain instances, supersede the statutory exclusion.  The statute was amended to provide for admission of evidence of prior sexual activity or reputation "when constitutionally required to be admitted."

To be "constitutionally required," other sexual activity evidence has to be more than simply relevant, it must be germane to the accused's right to confront witnesses against him or to present his theory of the case.  This is a decision best made on a case-by-case basis.  See 
Sandoval v. Acevedo
, 996 F.2d 145 (7th Cir. 1993).

Under the circumstances of this case, we see no reason to believe any evidence Dr. Lorand could have provided would have been "constitutionally required" or necessary to Darby's defense.  As the court held in 
People v. Hooker
, 253 Ill. App. 3d 1075, 625 N.E.2d 1081 (1993), evidence which merely shows that children have been molested by others is not relevant because it does not rebut the complainants' testimony regarding abuse by the defendant.

The same conclusion was reached in 
People v. Leggans
, 253 Ill. App. 3d 724, 625 N.E.2d 1133 (1993).  In 
Leggans
, the defendant was charged with sexually assaulting two children.  He sought to introduce evidence the two children previously had been victims of sexual abuse.  The court rejected the assertion that "this evidence would have permitted the jury to conclude that someone other than the defendant caused harm to the girls and the girls had sufficient knowledge of sexual activity to allow them to fabricate their allegations against the defendant."  The court said this theory regarding the victims' motive to falsely accuse him was speculation, offered in an attempt to divert the focus of the jury from the accusations against the defendant.

Evidence of other sexual activity can be admissible, but it must be relevant to an important issue in controversy.  For example, in 
People v. Hill
, 289 Ill. App. 3d 859, 683 N.E.2d 188 (1997), the defendant was charged with having a six-year-old perform acts of fellatio on him.  At trial the young complainant demonstrated knowledge of the anatomy and functioning of a sexually-mature male.  The court observed "[w]hen a child displays unique sexual knowledge and assigns it to experience with a defendant, the inference of guilt is overwhelming."

However, in 
Hill
, the court excluded evidence of prior sexual activity.  The defense attempted to offer evidence of prior sexual activity between the child complainant and a young, prepubescent boy.  The prior report, the court said, wasn't sufficiently probative under the specific facts of the case.  It simply wasn't capable of rebutting the child's unique display of knowledge about the sexual functioning of an adult male.

We conclude evidence concerning Dr. Lorand's examination of A.B. was inadmissible.  Having reached this conclusion, it follows that Darby's trial counsel was not ineffective for failing to call Dr. Lorand as a witness.

Darby's remaining contentions concerning ineffectiveness do not persuade.  Darby cites 
People v. Gunnart
, 218 Ill. App. 3d 752, 578 N.E.2d 1081 (1991), for the proposition that trial counsel's failure to call witnesses or develop an available defense is reason to find ineffective assistance of counsel.  However, in 
Gunnart
, unlike this case, evidence which had been available but was not discovered due to counsel's failure to investigate 
provided concrete information which could have been used to corroborate defendant's trial testimony.  In this case defendant cannot show how he was prejudiced by trial counsel's stipulation to the rebuttal testimony of Detective Gavin and Assistant State's Attorney Johnson.  On the contrary, by stipulating to this evidence, trial counsel was able to avoid the risk of more damaging evidence being presented.  It was a sensible trial strategy in the absence of evidence the testimony was vulnerable to cross-examination.

Similarly, we attach no error to trial counsel's stipulation to Dr. Sheehan's testimony.  Dr. Sheehan examined A.B. on October 13, 1995, one day after the alleged sexual assault by Darby.  Her examination corroborated A.B.'s claim of recent digital penetration.  Her testimony was relevant and admissible.  It would have been presented whether or not trial counsel agreed to the stipulation.  Darby does not say how he would have benefitted from requiring Dr. Sheehan's live testimony.

Darby also makes no attempt to support his claims that Hilda or Carmen's mother, Karen, would have offered relevant testimony which would have helped his defense.  Nor does he suggest what evidence might have been presented to explain why A.B. would have falsely accused him.  Unsubstantiated claims of counsel error are insufficient to support a finding of ineffective assistance of counsel.  Since Darby has not shown how he was prejudiced by the alleged errors, we need not determine whether counsel's performance fell below an objective standard of reasonableness.  
People v. Pecoraro
, 144 Ill. 2d 1, 13, 578 N.E.2d 942 (1991).

2. 
Court's ruling on the motion to exclude

Darby contends the trial court erred when it granted the State's motion 
in
 
limine
 to exclude evidence of A.B.'s past sexual activity and her family life.  He says the report of prior sexual abuse and Dr. Lorand's medical examination should not have been excluded by the rape shield statute because this evidence was relevant to his defense theory -- that A.B. had been sexually abused by someone else and her accusations against him were a product of "transference."

We have addressed this issue when deciding the ineffectiveness claim.  We found all collateral evidence of sexual abuse of dubious relevance and, at any rate, inadmissible under the rape shield statute.  The record simply does not support Darby's claim that the evidence of A.B.'s sexual history was probative to any issue in controversy.

We agree with what was said in 
People v. Jones
, 264 Ill. App. 3d 556, 636 N.E.2d 604 (1993):

"[N]othing logically links the victim's prior instance of sexual conduct with the alleged motive to lie.  Jones' argument, when stripped bare, advances the theory that a defendant may circumvent the rape shield statute and explore the victim's prior sexual history whenever he asserts that the victim has any motive to lie, which is, of course, absurd."

Darby now contends the prior abuse was admissible because A.B. made what appears to be an inconsistent statement to the police during the investigation of the prior report of abuse.  After Dr. Lorand's examination (which took place after the incident with Darby), A.B. told police E.B.'s grandfather had touched her "scoony" (vaginal area) over her clothes and he was the only person to "do anything like that" to her.

The existence of this vaguely inconsistent statement does not justify the introduction of all sexual history evidence.  See 
People v. Sandoval
, 135 Ill. 2d at 176.  This is especially true here, where any prejudice that might have stemmed from defendant's inability to explore the statement was cured by the latitude given to counsel in cross-examining A.B.  In lieu of a more generalized question regarding sexual abuse by someone else, the trial court allowed defense counsel to ask A.B., "Did anyone besides [Darby] put their finger inside you?"  By allowing this question, the relevancy of the prior statement was diminished, if not eliminated.

3. 
Prosecutorial Misconduct

Darby contends he was unfairly prejudiced because the State, when arguing in favor of exclusion of evidence in its motion 
in
 
limine
, misrepresented the facts to the court.  The State told the court the alleged abuse by E.B.'s grandfather occurred 10 months prior to the incident involving Darby and didn't involve penetration.  Darby says, based on Dr. Lorand's October 27, 1995 examination of A.B. and E.B., the State's comments were untrue and misleading.  We note the trial court examined the DCFS file before trial and would have been aware of its contents.

Because the examination occurred on October 27, 1995, and the alleged fondling by the grandfather was said to have occurred in December 1994 and January 1995, it is doubtful the cause of medical evidence revealed by this examination could be attributed to the grandfather.  We assign no error to the prosecutor's remarks.  We find no intention to deceive or mislead the court, nor is there any indication the trial judge relied on anything but the DCFS file in his pre-trial rulings.

Nor do we find, as Darby claims, the State took unfair advantage of the exclusion of other sexual abuse evidence.  The State said in closing argument the acts A.B. testified Darby performed were so aberrant that an eight-year-old could not have described them unless she experienced them.  

The prosecutor's statement was a legitimate inference drawn from the evidence, which the State was free to argue in its closing remarks in this bench trial.  
People v. Hooker
, 253 Ill. App. 3d 1075, 1091, 625 N.E.2d 1081 (1993).

4. 
Sufficiency of the evidence
 

Darby's final contention is that he was not proved guilty beyond a reasonable doubt.  In making this argument, however, he relies on information contained in A.B.'s DCFS file, including Dr. Lorand's medical evidence -- information not admitted at trial and, as we have determined, not admissible.  Defendant presents no good reason for us to hold the evidence against him was insufficient.

The trial testimony of A.B. and Darby amounted to a credibility contest.  Determining the credibility of the witnesses, the weight to be given testimony, and the inferences to be drawn from it, are responsibilities of the trier of fact.  
People v. Steidl
, 142 Ill. 2d 204, 226, 568 N.E.2d 857 (1991).  Our review of the trial record convinces us the evidence, viewed in a light most favorable to the State, was adequate to support conviction.

CONCLUSION

We affirm defendant's convictions and sentences for 

aggravated criminal sexual assault and aggravated kidnapping.

Affirmed.

WOLFSON, J., with SOUTH, P.J. and HOFFMAN, J., concurring.